The next matter before us this morning is 23-2056, Lowther v. Children, Youth, and Family Department et al. May it please the court. My name is Vince Ward, and I'm here on behalf of the Lowther family, the plaintiffs in this case. Members of the court, I haven't been in this courtroom before. And the quote above you, I think, is applicable to our case because the Lowther family is fighting this fight because the district court's ruling creates an imbalance between the investigation of suspected child abuse and the Fourth Amendment protections that are applicable to the home and families. Well, here you've made claims under the Fourth Amendment and under the 14th Amendment. Correct, Your Honor. And our law is a little confusing between the two, if I dare say so. Sure. That confusion, does that bake in a not clearly established problem for you with governmental immunity? No, Your Honor. In fact, I would say that the exigency exception to the warrant requirement is one of the clearest pronouncements of law in this court. That's been repeated in Rosca. It's been repeated in McInerney, which was decided in 2015. This court and the Supreme Court has repeatedly said that the home, the protection of the home, is foundational to the Fourth Amendment. But we also have case law that says that it supports entry into the home to seize a child if there is reasonable suspicion that the child has been abused. So, Your Honor, the two cases you're just talking about are Gomes and Arradondo. And those were cases brought under the 14th Amendment and the right of familial association. The Fourth Amendment really wasn't that issue. But Your Honor, what I would encourage this court to do. So let me stop you for just a second. Are we then moving on to the 14th Amendment? Do you basically concede that under those cases that your position would fail? No, Your Honor, I'm not. Not under the Fourth. But you're saying different standard, let's move on. OK. I'm saying, Your Honor, that this is foundationally a Fourth Amendment case. Well, but there's pleading under both. There are, Your Honor. Well, so if they had a right to enter and seize the child under the 14th Amendment, and they go in and they seize the child, it doesn't make a lot of sense that if they have the right to go seize the child under the 14th Amendment, that it's a violation of the Fourth Amendment. I disagree, Your Honor. I think that the legal standard under the Fourth Amendment is immediate danger, period. And it may be that our, if you look carefully at those cases, it may be that we've drifted away from what was really intended about has been abused. I think that the intent was has been abused and is at risk of being abused again immediately. But we're stuck with what a reasonable officer would understand. And at some point when it starts to get the rule against perpetuity and trying to figure it out, there comes a point where it's not really clearly established because the law is in flux. I disagree, Your Honor. So one of the facts that I want you guys to remember is that in this case, there was coercion at the door. The second fact I want you to remember is that the accused parent, the dad, had been seized. Now, there's a dispute over whether he was arrested or whether he was detained. It doesn't matter. He's seized. When he seized, it was factually impossible. Reason logic tells you that there was no way for the father to enter the home. The child's disclosure included that her brother also inappropriately touched her and abused her. Even though the father is out of the home, there's still a potential abuser in the home, right? So Your Honor, he's seven years old, OK? Well, he may be seven years old, but the disclosure from the child victim was that my father's abusing me and my brother's abusing me. I understand, Your Honor. And so again, I go back to reason here. When law enforcement shows up at the house, mom is home. The motivating consideration for going in there was this question of uncooperativeness because mom is asserting her right under the Fourth Amendment. She does that in the context of never being told what the allegation is. Not once is she told. Your daughter at school accused your husband and her little brother of abuse. That doesn't come up one time, Your Honor. The other thing is there's no question that mom is complying and abiding by it. They said if you get off the phone with your husband, we'll explain it to you, right? I disagree with that, Your Honor. That's not in the record? So I disagree with that they would have told her what the specific allegations were. I absolutely disagree with that. I think that what happened was when law enforcement arrived, they immediately thought that they could enter the home. And when they began threatening her, which they did three or four times, Your Honor, it throws everything into chaos. But in the midst of that chaos, what you have is an open door. You have kids that are running around. Yeah, but you cite in your brief that they could see the kids. And I went and checked those citations. And they don't support that allegation, that the kids were visible at all times. But I think we have to break it out into the first seizure and the second seizure. I agree. There's more information before the second seizure. I agree, Your Honor. I'm happy to transition to that. But I want to be clear here that I think that it would be a mistake for this court to walk away and not issue a decision that makes clear what the standard is under the Fourth Amendment. So let's say he was arrested when they put him in the police car and put him in handcuffs. And let's say that she was coerced. So they didn't have permission to enter. Then you would say we need what? Suspicion of imminent danger to the child? So we're not transitioning to the second removal yet. So this relates to the first. I want to get to the first end. Sure. So Your Honor, I think that there's case law in this court that talks about when officers create the exigency, when they've created this through coercive tactics, that it's not appropriate to apply the emergency aid exception. Well, they didn't create the exigency. I disagree. I think that if you look at the position of the appellants, I mean, of the appellees, Your Honor, they said the kids are not safe with mom because she was non-believing and she was supporting dad. When she's having that conversation with the police, she's having that conversation in the context of being repeatedly threatened with arrest or detention if she doesn't let them into her home. And that's why I think it would be a serious mistake for this court. That all goes to coercion, but I'm not sure it goes to creating the exigency. I mean, they've got a child who has given a rather shockingly detailed description of abuse. Child's four? Well, Your Honor, so I want to correct. So you're assuming that you're, so we have a child, two teacher, two law enforcement. So we've never been able to take discovery in this case around that. So I don't know that I would necessarily agree with that characterization, OK? But I do think that when you're looking at the balance, Your Honor, if you affirm this decision, then you're giving law enforcement the power to go to our homes, to threaten us with arrest or detention as a way of getting into our house, and then telling a non-suspected parent of abuse that we can't trust you because you won't let us into the house. And that's what creates the exigency. But if I could turn now to the second. Could there have been another exigency here, and that is at the time this all occurred, there was no, at least I didn't see a conclusion in the record that the father was going to be arrested and taken away. So at that time, we have to assume he's being detained while they're questioning people, and that he's eventually going to be released and get to go back in the house with the kids. And so isn't the exigency that we have to go in and find these kids and take these kids before the father gets back in there? I disagree, Your Honor, because I believe that your precedent around the ability to conduct a reasonable detention says that law enforcement gets to go conduct, it gives them time to conduct their investigation. And as they're conducting their investigation, though, the Supreme Court and this court has made clear that that time is not infinite. That that time is, I think that there's, I cite a case, Manzanares, that talks about the courts never upheld holding somebody in custody for more than 90 minutes. So I think what you have to do is look at the facts. So now you're looking at the arrest. So I'm transitioning into, I think that this is relevant to the arrest. So on the arrest, man, time flies. So on the arrest, I point to Cortez, the Cortez case, which was an en banc decision in this case. Very, very different. The babysitter's boyfriend hurt my kipi is vague. It's not specific. We have a child here who's acting sexually in her classroom at four years old and gives to her teacher a very disturbing, very graphic and specific description of what her dad and her brother are doing to her. And she acts it out. I disagree again, Your Honor. Well, you want to challenge whether that is what the child said. But as I recall looking at it, the district court found and made a finding that isn't challenged on appeal. Your Honor, what Cortez says is, when you have an allegation of abuse by a very young child, that's conveyed in hearsay. And that is not investigated. This court en banc has said that there's a duty and obligation for law enforcement to conduct an investigation before making an arrest. That's not what Cortez said. And Cortez goes on very clearly to say, we are not making a rule that hearsay, double hearsay, isn't enough. We're saying, in this case, given the very vague, you know, he hurt my pee-pee description, it's not enough. But they say three times in that opinion, we are not making a hard and fast, I should say, we say, we are not making a hard and fast rule about relying on hearsay, whether it be double hearsay or not. Your Honor, when you have a four-year-old child versus a two-year-old child, when you have a source of the statement is whether it's a nurse or a teacher. What Cortez is. The difference is the child spoke directly to the teacher. In Cortez, the child spoke to mom. Mom spoke to the nurse. Nurse spoke to the police. But Your Honor, I believe that that distinction makes it so that Cortez would never protect. You would never have a situation where law enforcement would need to investigate an allegation before arresting a person and destroying their lives based solely on the arrest. So do you think that the law enforcement officers could have obtained a warrant on what they had, just the statement from the teacher? Well, Your Honor, we know that they got a warrant that same evening. They had more by evening. Before this all occurred, they only had the teacher's statement. So do you think just on the teacher's statement, they could have obtained a warrant? Well, I think that, I don't think we'll ever know, because they never went to get the warrant. I think that what's relevant is. We're bantering here. You can tell me if you. But they did get the warrant before the interview at the Children's Justice Center. It was after. The warrant was that evening. It was after the interview, so I don't want to mischaracterize the record. I only have a minute or so left, so I'll address the last removal in my additional time. Thank you. May it please the court. My name is Brian Griesmeier. I'm representing the county defendant appellees in this matter. And I'll split my time with CYFD counsel as appropriate. I'll be addressing the August 30, 2017 events. So let me ask you this. Before the interviews, before interacting with the parents, based on the teacher's statement, do you think the officers could have obtained a warrant? Yes. OK. Yes. It doesn't take very long to get a warrant. This all happens in the course of a day. Isn't this the kind of case where the proper practice would be just to stop and get the warrant on the way over to the house? I don't believe that that's as fast as that could have happened. I don't think the record even supports that with the warrant that was obtained and not even executed until about 1 AM that same night. When was the warrant presented? I don't have that information. I've signed a lot of warrants. I've had officers show up at my house, call 15 minutes ahead, and 15 minutes later, they had a warrant. So the other issue with the warrant is that doesn't solve the problem of removing the children. Because that's a different process that's the ex parte custody order is the only way to comply with the 14th Amendment to actually remove the children. That process is a lot different. It's unclear how long that would have taken. So just getting a warrant to detain or arrest Adam Lowther doesn't really solve the problem of the emergency circumstances that exist for the children. And so that process is a CYFD process. It's generally CYFD that would actually apply for that. It goes through the Children's Court. The record supports that it took several days in this case in order to even get that. And when you have an emergency circumstance. Then why'd you go get a warrant that night? The warrant. It doesn't matter. All they had to do was get the ex parte order several days later. Well, they wouldn't have been able to hold the children, though. I mean, a warrant with the father, and then it's unclear if he would get out immediately. No, I know it. That's what I'm saying, though. Why do it? I mean, maybe you wouldn't have been able to hold the father. But you could have still had the exact same factual basis for seeking the ex parte order. But this case has a lot of moving parts, is what I'm saying. I mean, you want to skip to the last part of it. But you had to do some things to ever get to the last part, to get to the ex parte order. Because your ex parte order didn't just say the teacher told us this. Give us an ex parte order. Correct. There was additional investigation that took place during that time that I think was important. At least somewhat based on a warrantless entry into the house. Well, Your Honor, the warrantless entry into the house is based on the emergency circumstances that arise when you have significant disclosures of abuse coupled with the personal observations of the teacher, demonstrative hand movements. This gives rise to an emergency circumstance that puts the children at an immediate safety risk. And when we look at the case that really tells us what is an emergency circumstance during a child abuse investigation, the only one is Arradondo, as well as this unpublished opinion of Sylvan V. Briggs. And comparing the facts to those two cases, we have an emergency circumstance that's comparable to those cases. And importantly, in Sylvan, that emergency circumstance was determined under Arradondo, and then it was applied to the Fourth Amendment, comparing it to Rosca. So when these officers are faced with an emergency circumstance because of the disclosure of abuse, everyone treated this as an emergency. It was coded as an emergency from the beginning. Officers had to make contact. CYFD had to make contact. Investigator Morales was able to interview or at least confirm the report with the teacher. And by the time they show up to the door, there's already a very heightened emergency situation that's unfolding. It's not practical to have these officers then detain the entire house for hours and hours to try and get a warrant, especially when the interaction at the door doesn't really assuade them or eliminate the emergency circumstances. I mean, I think that it's important to point out in the CYFD report that part of the disclosure from AL is also that she can't tell her mom, that she feels if she were to tell mom, she would scream. And then what happens when they're at the door and they do tell mom that your four-year-old daughter made a descriptive disclosure at the school? Mom gets angry. That's not really what they said, though, is it? They said, we have an allegation of abuse. If you'll hang up, we'll tell you what it is. Well, before they make the entry into the home, they'll additionally tell mother that it's your daughter who made a disclosure to the school, and she was very descriptive in what she said. And then the mother reacts by saying it's baseless. And this is on the Deputy Small, on her bell tape audio. This entire interaction is captured. So I mean, it's not true that she was not informed that the disclosure came from her daughter, that it was descriptive, and that, additionally, the mother reacts by saying it's baseless accusations, it's unbelieving. What we really have here is a timeline that's condensed and very similar to the Sylvan v. Briggs case, where this court, again unpublished, did determine that there was an emergency circumstance under the 14th Amendment and applied it to the Fourth Amendment. And certainly, it wasn't unreasonable for officers in this situation to believe that there were emergency circumstances when looking at the controlling case law. Well, I want you to assume that you could have gotten a warrant in an hour, that your clients could have gotten a warrant in an hour, OK? If that's the assumption, is this a case where you should be required to get a warrant? I mean, is an hour? I mean, are we really? I mean, mom and dad don't know you know. They don't know you're going to show up at the house and want to come in and take the kids away to a safe house and interview them. So dad's at work. I mean, what's an hour? Is there an immediate threat? I think under the existing case law, yes, Your Honor. There is an immediate threat to the safety of these children as soon as you have the CYFD report with its disclosures, observations, hand gestures. That gives rise to an emergency circumstance that will mean. It gives rise to, I think, reasonable suspicion this child had been abused. But the question is whether it was such an emergency that you couldn't take an hour to get a warrant. And I see you talking an arrest warrant for Dr. Lowther, who they believe is the primary abuser. So he's in the patrol car, handcuffed for part of the time. He can't possibly abuse the daughter at that point. Is there any immediacy at that point that prevents them from going and getting an arrest warrant? I don't think. I think that's the wrong signal to send officers when they're faced with these situations. It's not about signals. It's about constitutional rights. Well, and my argument, Your Honor, is that under existing case law, where there is reasonable suspicion that a child has been abused or there's an immediate threat of abuse, under Arradondo, that gives rise to an immediate risk to their safety. At least under the case law, as would be understood by a reasonable officer acting in these circumstances. Well, we have under our case law, as I read it, two different standards. One for the Fourth Amendment, and one for the Fourteenth Amendment. I haven't seen a single Fourth Amendment case that says child has been abused is enough to enter as an exigent circumstance. So under a Fourth Amendment analysis, you've got to have an immediate threat to the child. Well, and that's what I think interesting about the Arradondo and the Gomes standard, is that really, that's the same language that this court used in those cases. Well, those are both Fourteenth Amendment cases, right? Correct. But it still is that it's an immediate safety threat to the child is the emergency circumstance. And it really just elucidates the more specific test when it comes to child abuse cases in adopting the majority standard, citing cases such as Hatch from the First Circuit, that it's when there's reasonable suspicion that a child has been abused or there's an imminent threat, that gives rise to an immediate safety risk to the child. Have you seen a case from the Tenth Circuit or the Supreme Court under the Fourth Amendment that says past abuse is enough for entry into the home without a warrant? As far as entry into the home, I don't believe so. But the Sylvan v. Briggs case, I think, is key here because it also analyzed it under the Fourth Amendment and found that the Fourth Amendment seizure was reasonable. The Fourth Amendment analysis in Sylvan v. Briggs is different than the analysis here. And the Fourteenth Amendment in Sylvan, I think, is a substantive due process argument, which is different than we have here. But I could be remembering that. I think there was both, Your Honor, in Sylvan. There was actually a procedural and a substantive. And so under the procedural, they used Arradondo's test to find emergency circumstances. And then they applied those same emergency circumstances to the Fourth Amendment seizure. If we break it down, is your argument that our law is so confused that no reasonable officer should be expected to understand that past abuse isn't enough under one constitutional amendment, but it is enough under a different constitutional amendment? Absolutely, Your Honor. I think in this case, there were emergency circumstances first. But yes, secondly, the test is really whether it would have been clear to a reasonable officer that there weren't. And I think on that test, looking at the case laws that exist and how these cases have modified the standard moving along all the way up to Sylvan, it's just not clear. And the law is not clearly established. And as appellants suggest that this court clarify these standards, I think that by itself is indicative of the fact that there's not a clearly established law here to put officers on reasonable notice. Is part of the exigency that the fear that the mother will inappropriately interact with the daughter? That's absolutely part of it. And as I mentioned, part of the disclosure itself from AL in the CYFD report is that mother will scream if I were to tell her. So there's a reason why this girl discloses to her teacher that she's only been in the classroom for two weeks and not the mother. So if the father is in shackles in the patrol car, the daughter is still at risk in dealing with the mother. It's certainly reasonable to infer that. OK. Yes. So that would be the second removal, right? No, I believe that's true even for the first removal. Based on the interaction at the door and even the CYFD report and the disclosure from AL. And I am cognizant of my time here. I know that there wasn't the second removal addressed yet. And I think CYFD counsel can address that hopefully in a minute or two, Your Honor. Good luck. Thank you. May it please the court. My name is Nicole Workmeister. I am appearing on behalf of the CYFD social workers, Ms. Morales and Ms. Miles. There was even more extinguish with regard to the second removal than there was with the first. Because as this court has pointed out in questioning, there was much more information in addition to the initial CYFD report or the teacher's report to CYFD by the time of the second removal. There was also the additional safe house interviews where the children corroborated the initial disclosures. There was a medical exam by a nurse that was reviewed by a physician. There was the events that occurred in the courtroom that at the criminal release hearing that And did they have the calls from the jail by then saying that they were going to run away with the kids? That information was disclosed and became known to CYFD during the hearing, as it was reported by the DA during that hearing. So there was the issue of absconding with the children. There was a lot of information that changed the status quo after 5 PM on the day of that hearing that CYFD social workers then relayed to law enforcement that led to the second removal decision. You argue that the social workers can't be liable for the removals because they didn't have power to remove. That runs counter to our precedent, doesn't it, in ROSCA? I don't believe so. I think if you look at the underlying constitutional standard for individual liability, it is reckless and intentional misconduct. It's the deliberate and different standard for constitutional liability against individuals. So whatever case you're looking at for CYFD social workers to be liable, that's the standard by which they have to be judged. Did they engage in intentional or reckless misconduct? And simply relaying accurate information about events that transpired to law enforcement does not exhibit that kind of intentional misconduct. And in fact, it is what we would like to encourage social workers to do, to relay as much information to law enforcement as possible so that law enforcement can make a decision based on the most information available. Well, the argument in the brief is that because, for example, Investigator Morales is not law enforcement and she could not have obtained a warrant, that she can't be liable for not having the warrant to enter the house. But as I understand our case law, there's no special exception to the warrant requirement for social workers. And if they are intimately involved in the decision to enter without a warrant or to seize a child, they can, if they meet the other standards you've talked about, they can be found liable. Do you disagree with that? I don't. That would be the DALCOR decision that addresses the issue that you have just raised, Your Honor. And that decision, it's an unpublished 10th Circuit decision, but it does reiterate the constitutional standard that liability for law enforcement's actions can be imputed on social workers only if there is evidence of reckless or intentional misconduct. Well, I'm dealing with the argument that was made in the brief, which is I am immune because I don't have power to get a warrant. And I think ROSCA, which is a published decision, says that that is not true. I think that the DALCOR decision, which took into consideration all the previous constitutional law and which applies specifically in the social workers, CYFD, law enforcement context, in the context of removal of children illuminates that standard and sets forth the standard about imputing a liability, not imputing liability unless there is intentional and reckless misconduct. And simply passing along information or giving input to law enforcement that informs law enforcement's decision is not sufficient to impose constitutional liability. Thank you. Thank you. We'll take this matter under. Did you have a rebuttal? Did you have a rebuttal? I'm sorry. You have one minute. So first of all, under the Fourth Amendment, the standard is serious physical injury or threat of death, not mom yelling at the kid. But I want to turn to the second removal. So in the second removal, all of the facts that the appellees raised, all those things were known when they gave the kids back to mom. And they did it pursuant to a safety plan. There's evidence that I cite to that says that the social worker who was working on the case didn't think that there was an immediate danger. And also, the social worker said that there wasn't any new instance of abuse that she was aware of. But all bets were off when the neutral supervisors, I forget what they call them, indicated at the hearing that they weren't very neutral at all. And they had additional information about mom and dad talking about absconding with the children. That was known before when they gave the children back, Your Honor. So they knew all of these details and yet still gave the children back to mom. And the only reason they took the children away from mom at that point, and imagine the trauma, the ensuing trauma that occurs, is because the grandfather allegedly said something that CYFD didn't like. Thank you, Your Honor. Thank you. Now we'll take this matter under review.